hKLIEBERT,
Chief Judge.
Defendant, Wal-Mart Stores, Inc., appeals from a judgment awarding plaintiff, Lee Allen Boutte, $3,171.00 plus all costs for damages sustained when plaintiff slipped and fell in defendant’s store. We reverse.
On April 3, 1992, Boutte entered defendant’s store in Harvey, Louisiana to purchase a seal beam for his ear. On his way to check out the item, Boutte slipped on some pieces of a hot dog and fell to the floor. Plaintiffs, Lee Allen Boutte, and his wife, filed suit against the defendant for personal injuries sustained by Lee Allen Boutte in the slip and fall. His wife filed a claim for loss of consortium connected to Boutte’s claim. After a trial on the merits, the trial court rendered judgment for Lee Allen Boutte against the defendant but denied the claim for loss of consortium.
Wal-Mart asserts that the trial court erred in finding that it had constructive notice of the hazardous condition and in finding that the plaintiff carried his burden of proof under LSA-R.S. 9:2800.6.
LSA-R.S. 9:2800.6 provides that:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the ^premises free of any hazardous condition which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise'-reasonable care.
(C) Definitions:
(1) “Constructive notice” means the condition existed for such a period of time that *374 it would have been discovered if the merchant had exercised reasonable care.
(2) “Merchant” means one whose business is to sell goods, foods, ware, or merchandise at a fixed place of business.
(D) Nothing herein shall affect any liability under which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322 or 2695.
Fran Maise, a Wal-Mart employee, was working in the furniture department at the Wal-Mart store. At approximately 3:15 P.M. Maise was zoning her department. “Zoning” is a process employed as a protective measure at Wal-Mart stores whereby employees, responsible for a particular area of the store, are required to, aisle by aisle, inspect their areas, fronting merchandise, picking up anything off the floor, checking for hazards, and generally insuring that their work area is in a neat, presentable, and safe condition. Ms. Maise worked from 7:00 a.m. to 4:00 p.m. Employees are required to zone at the beginning of their shift, before and after they break for lunch, and in the last hour prior to the end of their shift. According to Maise, she had begun zoning her area at approximately 3:00 P.M. The first aisle Maise inspected was the one where plaintiff slipped. While inspecting the next aisle, Maise was informed by a customer that there was a man laying on the floor one aisle over. Maise found the plaintiff lying on the floor on the aisle she had just zoned. Bernice Goff-ner, a Wal-Mart employee in the process of zoning the adjacent Raisle in the domestics department, went to the furniture department looking for a ladder. Upon Goffner’s arrival at the scene, Maise instructed Goffner to alert management of the situation.
David Woods, assistant manager at the Wal-Mart store on April 3, 1992, was paged to the furniture department. Mr. Woods arrived in the furniture department and found the plaintiff lying on the floor. Woods observed several pieces of hot dog in the middle of the floor and a couple of pieces of bun. He also observed a smear mark on the floor in the area as an apparent indication of a slip through the hot dog pieces. Assistance was given to Mr. Boutte.
In brief, the defendant concedes that the first condition of LSA-R.S. 9:2800.6(B) has been met, i.e., that the condition presented an unreasonable risk of harm to the claimant and that the risk of harm was reasonably foreseeable. However, the defendant argues that the plaintiff failed to carry his burden of proving the two remaining conditions of that statute.
There is no evidence in the record that the defendant either created or had actual notice of the condition which caused the plaintiff to slip and fall prior to the occurrence. Therefore, under LSA-R.S. 9:2800.6(B), the plaintiff had the burden of proving that the defendant had constructive notice of the condition prior to the occurrence, i.e., that the condition existed for such a period of time that it would have been discovered if the defendant had exercised reasonable care.
There was no testimony or any evidence as to how the hot dog came to be on the floor in the furniture department at the Wal-Mart store, nor any testimony or evidence as to how long this hot dog had been on the floor in the furniture department. Approximately five to ten minutes before Mr. Boutte was found on the floor, Wal-Mart employee Fran Maise had inspected that very same aisle. Fran Maise testified that there was nothing on the floor in the area where Boutte slipped five minutes prior to his accident. Maise and Goffner testified that they did not hear any noise in the area at the time of plaintiffs slip and fall.
|4The plaintiffs testimony was filled with inconsistencies. He denied any past accidents or past medical treatment, in spite of the fact that his medical records clearly contradicted this testimony. The trial court noted that it had a problem with plaintiffs credibility.
Woods also investigated whether the Wal-Mart snack bar, which sold hot dogs, had sold a hot dog to the plaintiff. Woods’ investigation revealed that the snack bar had not sold a hot dog to Mr. Boutte and, within the one hour period just prior to the accident, only one hot with chili and cheese had been sold.
*375 In addition to the plaintiffs burden of proving that the defendant had constructive notice of the hazard, the plaintiff must also prove that the defendant failed to exercise reasonable care to prevent the existence of such a hazard. The trial court concluded that the defendant’s inspection and safety procedure, if followed perfectly, would prohibit foreign objects from being on the floor for any length of time. Our view of the evidence leads us to the same conclusion. Notwithstanding this conclusion, the trial court’s judgment for plaintiff implicitly concludes that the plaintiff earned his burden of proof to show that the defendant failed to exercise reasonable care. We find no evidence in this record to support such a conclusion. Rather, the evidence presented clearly shows that the defendant did exercise reasonable care in attempting to eliminate and detect foreign objects on its floors. The evidence further showed that the defendant had complied with its safety procedures in place. We are unable to reach the same conclusion as the trial court, based on the record before us, that the plaintiff carried his burden of proof that the defendant failed to exercise reasonable care, as required by LSA-R.S. 9:2800.6.
Testimony was elicited concerning the policies and procedures in place at the Wal-Mart store on April 3, 1992 relative to safety and clean up. All employees were given training-in safety and employees zoned their particular areas four times a day. Additionally, Wal-Mart employed a safety sweep program whereby an ^employee, devoted solely to maintenance of the store, inspected and swept the store approximately every two hours. Wal-Mart’s policy concerning spills was outlined — any employee observing a spill was instructed not to leave the scene of the spill and to remain there until the employee was able to either clean the spill, or to hail another employee to assist in either retrieving some instrument for cleaning the spill or to call the maintenance person in order to have the spill cleaned.
The evidence presented in this matter shows that the area where plaintiff slipped was inspected by defendant’s employee five minutes prior to the accident. According to that employee’s uncontradicted testimony, no foreign objects were observed on the floor at that time. Under the facts and circumstances presented, we therefore conclude that the trial court was in error in finding that the plaintiff carried his burden to prove that the defendant failed to exercise reasonable care to prevent the accident.
For the foregoing reasons, we reverse. Plaintiffs-appellees are cast for all costs.

REVERSED.